IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
97 JUN 16 AM 11: 10
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| SHIRLEY FERRILL, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| vs. | ) | CV-96-AR-2175-S |
| | ) | |
| THE PARKER GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
JUN 16 1997

## MEMORANDUM OPINION

The court has before it cross-motions for summary judgment in the above-entitled matter, one filed by defendant, The Parker Group, Inc. ("TPG"), and one filed by plaintiff, Shirley Ferrill ("Ferrill"). The essential facts are undisputed. Therefore summary disposition is appropriate.

### A. Pertinent Facts

TPG is a corporation that performs commercial database marketing and screen calling for various companies. TPG also conducts polling and other lobbying work for political candidates. In the latter aspect of its business TPG hires temporary employees to make "get out the vote" calls for political candidates in the weeks immediately preceding an election. Ferrill was such an employee. She worked for TPG only briefly from September to

1

November 1994. She worked primarily on Jim Folsom's gubernatorial campaign. Along with a substantial number of the other temporary "callers", Ferrill was released after the election when TPG's business was reduced by approximately 90%. This reduction-in-force was inevitable and was necessarily anticipated by all temporary employees.

It is undisputed by TPG that a small percentage, approximately 10%, of its "get out the vote" calling--which constituted roughly 60% of its overall business--was so-called "race-matched" calling. Race-matched calling means that black callers call only black voters and white callers call only white voters. The rationale for this practice is that it is more likely to lure these voter groups to the polls on election day. Put another way, the theory behind this race-matched strategy is that black voters will more readily identify with and be sympathetic to "black voices" whereas white voters will more readily identify with and be sympathetic to "white voices." Different "scripts" are also utilized depending on which racial group is being solicited. The voice-matched strategy is also used with regard to regional dialects, i.e., callers with Midwestern accents will be employed to call Midwesterners. Race-matched calling is only employed by TPG when it is specifically requested by a customer. TPG customers who apparently requested

2

this service include, but are not limited to, former Alabama Governor Jim Folsom, U.S. Congressman Earl Hillard and Birmingham Mayor Richard Arrington.

Ferrill was assigned to a group of black callers who attempted to "get out the vote" of black voters during the Jim Folsom campaign. During a race-matched calling campaign, callers were segregated not only by who they called but were also physically separated from one another by race. Black callers were placed together and white callers were placed together in separate rooms. Ferrill testified, without contradiction, that, at times, she was placed in the larger, and apparently more comfortable, of TPG's two calling rooms, and sometimes she was placed in the smaller, and less comfortable, room. The callers were apparently segregated in order to make supervising these callers, who had different scripts and assignments, easier. When such race-matched calling was not requested by a client, there is no evidence that the callers were segregated in any way.

### B. Summary Judgment Standard

Rule 56 states, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

3

law. F. R. Civ. P. 56(c). As stated by the Eleventh Circuit, "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

### C. Legal Analysis

Ferrill filed her suit solely pursuant to 42 U.S.C. § 1981. She did not invoke 42 U.S.C. § 2000e, *et. seq.* ("Title VII"). Section 1981, after it was amended by the 1991 amendments to the Civil Rights Act of 1964, broadly prohibits intentional discriminatory conduct which interferes with the terms and conditions of an employment, or other, contract. *See Douglas v. Evans*, 916 F. Supp. 1539, 1554-55 (M.D. Ala. 1996). Even though the statutes and remedies are distinct, the analysis for determining whether a defendant intentionally interfered with an employment contract under § 1981 is the same as that employed under Title VII. *Id.* at 1555.

Where the evidence is circumstantial, in order to determine whether someone was terminated from employment because of race, and in violation of § 1981, the familiar burden shifting analysis of

4

*McDonnell Douglass Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089 (1981), is employed. *See Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1060. Under *McDonnell Douglas,* plaintiff has the initial burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination. *Id.* In order to show discriminatory discharge, a plaintiff must show: (1) that she is a member of a protected minority; (2) that she was qualified for the job from which she was discharged; (3) that she was discharged; and (4) that her position was filled by a non-minority or deliberately not filled. *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir. 1995). The parties all concede that plaintiff meets the first three prongs of the test. It is the last prong that is at issue. Ferrill fails this prong and thus fails to prove her prima facie case of discriminatory termination. She fails to adduce any evidence that her position did anything, except evaporate. It was not filled by anyone, let alone a non-minority. The evidence clearly shows that plaintiff was a <u>temporary</u> worker hired primarily for the Jim Folsom campaign and that when the job was completed she, and numerous other employees, were let go. Even if plaintiff had been able to make out her prima

facie case, and the burden had shifted back to defendant to show a legitimate, non-discriminatory reason for its employment decision, TPG has met this exceedingly light burden. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528(11th Cir. 1997). TPG proffered such a reason, namely that the Folsom campaign had come to an end and that Ferrill's services were no longer required. When a defendant offers a legitimate non-discriminatory reason for its employment decision, the burden shifts to plaintiff to show that defendant's proffered rationale is pretextual. *See Id.* Plaintiff has offered no evidence whatsoever that would justify a fact finder to disbelieve defendant's proffered explanation. *Id.* at 1538. Accordingly, defendant's motion for summary judgment as to plaintiff's termination is due to be granted.

With regard to the race-matched calling and the segregation of workforce, plaintiff prevails. It is well established that assignment of job duties based solely on race violates Title VII, and accordingly § 1981. *See Knight v. Nassau County Civil Service Commission,* 649 F.2d 157, 162 (2d Cir. 1981), *cert. denied,* 454 U.S. 818, 102 S. Ct. 97 (1981). This is true even where the discriminatory assignment is benign or well intentioned. *See id.* Employers are forbidden by § 1981, and the other relevant

6

employment discrimination statutes, from assigning work based on stereotyped assumptions, even if real world exigencies make such stereotyping politically desirable. There is no evidence that defendant was acting with any racial animus in the present case. Even so, defendant must be held liable for having acceded to the requests of its clients, namely those candidates for political office who perhaps knew better or should have known better than to request or encourage such an obvious violation of the law.

It cannot be denied by TPG that assignments were given to Ferrill solely on the basis of her race and for no other reason. TPG has not, and could not, proffer any legally recognized defense to this act of discrimination. "Practicability" or "politics" is not a defense to racial discrimination. Accordingly, plaintiff's motion for summary judgment on this issue is due to be granted as to TPG's liability.

The court recognizes that the legal rule in this case might well prevent advertisers from employing, based on race, actors to solicit products to a certain group. *See generally*, Lois L. Krieger, Note, *"Miss Saigon" and Missed Opportunity: Artistic Freedom, Employment Discrimination, and Casting for Cultural Identity in the Theater*, 43 Syracuse L. Rev. 839 (1992); *but see*

7

*Spann v. Colonial Village,* 662 F. Supp. 541, 547 (D.D.C. 1987)(Section 1981 does not provide a cause of action, for potential customers or tenants, for advertising that may indicate a racially discriminatory preference), *aff'd,* 899 F.2d 24 (D.C. Cir. 1990), *cert. denied,* 498 U.S. 980, 111 S. Ct. 508 (1990). It might even go so far as preventing the exclusive hiring of black actors to play such roles as Othello. *See* Krieger, *supra* at 857. Nevertheless, this is the state of law, and this court has found no authority to the contrary.

A separate and appropriate order will be entered.

DONE this 16th day June, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT