IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED 97 NOV 21 PM 2:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

SHIRLEY FERRILL, }
    Plaintiff }
vs. } CIVIL ACTION NO.
} 96-AR-2175-S
THE PARKER GROUP, INC., }
    Defendant }

ENTERED
NOV 21 1997

## MEMORANDUM OPINION

The court has before it a timely petition for attorneys fees filed by plaintiff, Shirley Ferrill ("Ferrill"), and a timely renewed motion for judgment as a matter of law or, in the alternative, for an amendment to the judgment, for a remittitur or for a new trial, filed by defendant, The Parker Group, Inc. ("Parker Group").

On June 16, 1997, this court granted summary judgment in favor of Parker Group as to Ferrill's claim of wrongful termination brought pursuant to 42 U.S.C. § 1981. Simultaneously, this court granted partial summary judgment in favor of Ferrill and found Parker Group liable, as a matter of law, with regard to Ferrill's only other cause of action. It, too, was based on § 1981. In it she complained of discrimination in the form of racial segregation and disparate treatment in the workplace based on race. The opinion accompanying that order is a necessary preface to this

1

76

opinion and is recommended reading if a reader wants to understand where the court is coming from. *See Ferrill v. The Parker Group, Inc.*, 967 F. Supp. 472 (N.D. Ala. 1997). In its order of June 16, 1997, the court reserved for jury trial the question of the damages, if any, suffered by Ferrill in the form of emotional distress, and the damages, if any, to be assessed against Parker Group for the purposes of punishment and deterrence.

On October 17, 1997, after hearing evidence offered by plaintiff and defendant, a jury awarded Ferrill compensatory damages of $500 and imposed punitive damages in the amount of $4,000. The court thereupon entered judgment in the amount of $4,500.

On October 20, 1997, pursuant to Rule 54(d)(2)(B), F.R.Civ.P., the court ordered plaintiff's counsel, in any petition for attorneys fees they thereafter filed pursuant to 42 U.S.C. § 1988, to disclose the terms of any fee arrangement with Ferrill.

All pending post-trial matters were set for oral hearing on this court's regular motion docket on November 14, 1997. Counsel for Ferrill appeared. Counsel for Parker Group did not. Given that the issues had been briefed by both parties, oral argument was not crucial, but the court regretted not having the opportunity to ask counsel for Parker Group one or two pregnant questions.

Logically, the first issue to be addressed is the extent to which, if at all, the $4,500 judgment should be altered in favor of

2

Parker Group, because, if the judgment is set aside or reduced in amount, such a change might affect the status of Ferrill as a "prevailing party" and thus Ferrill's entitlement to attorneys fees.

### The Compensatory Damages

Ferrill, who is black, testified that she was humiliated by the fact that, despite her acknowledged manner of speaking without any discernable accent, she and other black telephone callers employed by Parker Group, a political consulting firm, were totally separated from white callers, and that black callers were required to call black voters while white callers were required to call white voters.  Not only did Parker Group order these two forms of racial separation, but the scripts used in calling blacks and those used in calling whites were markedly different.  For instance, the script used for calling black voters was not too subtly designed to incite hostility toward candidates whose opponents were Parker Group's clients.  Hanging the Ku Klux Klan around the neck of a candidate is nothing unless it is a play to black racial sensitivity.  It can only be characterized as deliberately inflammatory.

Who else, except the alleged victim of racial segregation and racial stereotyping, is to say whether she or he suffered embarrassment or distress as a result?  Apparently, Ferrill not only resented Parker Group's physical separation of its employees

3

by race but rebelled at the condescension inherent in the scripted calls to blacks. What humiliates one person may not be at all bothersome to another. If two persons similarly situated both suffer mental anguish as a result of the same proscribed act, one's degree of anguish may be less than the other's. The human psyche is a complex thing. This is why the assessment of damages for mental anguish is a matter best left to the discretion of a jury. In this particular case, the jury assessed Ferrill's compensatory damages at $500, hardly a sum to be criticized for excessiveness, that is, unless the court is required by law to agree with Parker Group's contention that there was insufficient evidence to support a claim for mental anguish. The court notes that Ferrill complained to Parker Group at the time of the employer conduct about which she here complains. This is just one piece of the evidence upon which a reasonable jury could find, as this jury did, that Ferrill suffered $500 worth of mental anguish.

Parker Group's reliance on *Walker v. Anderson Electrical Connectors*, 944 F.2d 841 (11th Cir. 1991), is misplaced. That case was one in which the jury found a violation of Title VII but found that no actual damage had been sustained by the plaintiff. In that case, the plaintiff, post-judgment, sought the imposition of at least nominal damages in order to vindicate the protected civil right that had been violated. In the instant case, the jury responded much differently. On sufficient evidence, it found

4

actual damages of $500.

This court is not willing to hold that in order to obtain damages for mental anguish a plaintiff must offer the testimony of a psychiatrist or a person who saw the plaintiff burst into tears. This court's view is shared by Lindemann and Grossman in their *Employment Discrimination Law*, 3d Ed. Vol. 2 at 1828, where they say:

> There exists no one required way to prove emotional distress. "[G]enuine injury in this respect may be evidenced by one's conduct and observed by others. Some courts have said that the testimony of the plaintiff alone can suffice.[282]

---

[282] *E.g.*, United States v. Balistrieri, 981 F.2d 916, 930-33 (7th Cir. 1992) (although characterizing the testers' testimony in a housing case as "somewhat general and conclusory (and strikingly consistent)," a court noted that given the indignity the plaintiffs suffered it would defer to the jury's evaluation that the testimony supported modest awards for emotional distress), *cert. denied*, 114 S.Ct. 58 (1993); Chalmers v. City of Los Angeles, 762 F.2d 753, 761 (9th Cir. 1985) (a street vendor harassed for the sale of t-shirts, "testified at trial to the anguish, embarrassment, anxiety, and humiliation which she suffered"); *cf.* Stallworth v. Shuler, 777 F.2d 1431, 1435, 39 FEP 983 (11th Cir. 1985) (upholding a $100,000 award based on the testimony that the plaintiff "suffered emotional stress, loss of sleep, marital strain and humiliation" because of racial discrimination against him, notwithstanding defendants' objection that he did not consult professional help, did not miss work, "and did not slip[] in his relationships with his students or coworkers"; plaintiff explained he "was being very careful not to give the school system any ammunition to use against him"); Seaton v. Sky Realty Co., 491 F.2d 634, 636 (7th Cir. 1974) (given the circumstances, a housing discrimination plaintiff adequately supported his claim by testifying: "I was humiliated. I was intimidated, not only as a person, but as a man. He stripped me of my right as a father to my kids.").

### **The Punitive Damages**

The vulnerability of the $4,000 punitive award is a somewhat more difficult question than the vulnerability of the compensatory

award. What does it take in terms of money to punish an employer for its acts in violation of § 1981 and to deter it and others similarly situated from engaging in like conduct in the future? With a $4,000 punitive judgment to pay, it is unlikely that Parker Group will do again what it did here (that is, unless the punitive award is set aside). It is also likely that competing pollsters will think twice before they do the same thing.

Any difficulty in justifying $4,000 in punitive damages lies in the fact that Ferrill had to meet a higher burden than to obtain actual damages, i.e., to prove that Parker Group's actions were malicious or were done in reckless disregard of Ferrill's federally protected rights. *See Walters v. City of Atlanta*, 803 F.2d 1135, 1147 (11th Cir. 1986); *Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C. Cir. 1995). The court concedes that there is a legitimate societal debate over whether political polling and "get-out-the-vote" organizations, and for that matter, political parties themselves, that use the technique employed by Parker Group should be civilly punished for their acts, not only to teach such groups a lesson, but also to put out the word that such conduct will not be tolerated as some sort of implicit, benign exception to the § 1981 proscription against disparate treatment of employees based on race. The problem is somewhat analogous to the qualified immunity conundrum in § 1983 cases. What should a reasonably sophisticated political organization be expected to know about the federal

statutory "do's and don't's" in order to avoid malicious or reckless violations of the protected right of its employees? In Ferrill's case, it was clear at the time the court granted summary judgment in favor of Ferrill on the question of Parker Group's § 1981 liability for racial discrimination that the type of operation being conducted by Parker Group was nothing new. It was, and may still be, a well-recognized technique employed in the political game. The day after this court's opinion of June 16, 1997, (967 F. Supp. 472), was issued, the Associated Press sent out a bulletin which quoted a political scientist as saying: "If you were targeting an elderly audience you wouldn't use a teenager to sell life insurance or Dentu-Creme." In other words, political experts argue that it is neither wise nor fair to apply § 1981 as this court is applying it. The court only responds by saying that the law does not always make good sense and that the law does not change from context to context. Here, § 1981 contains no exception, express or implied, for employers and employees in the political arena.

  Parker Group never interposed the First Amendment's guarantee of freedom of expression as a defense to Ferrill's action. When ruling on a summary judgment motion under Rule 56, F.R.Civ.P., or on a motion for judgment as a matter of law under Rule 50, F.R.Civ.P., a court is not required to rule upon issues not raised. How this court would have ruled on the question of whether freedom

7

of expression trumps the prohibition against racially disparate treatment in the workplace is a purely academic matter, and the question need not be answered.

Considering the character and degree of the alleged wrong in this case, as this particular jury was instructed to do, it set punitive damages at $4,000. No evidence was presented of the financial condition of Parker Group. Even if Parker Group is assumed to be impecunious to the point of bankruptcy, it is impossible in today's world of *Gore v. BMW* to categorize $4,000 as "excessive" when the dual purposes for imposing punitive damages are considered. The final question, then, is: "Did Ferrill meet her burden of proving maliciousness and/or reckless indifference?"

With mixed feelings, this court defers to the Seventh Amendment and to the fact that this court carefully instructed the jury on how to approach the issue of punitive damages. The court also keeps in mind that "due process" in the assessment of punitive damages necessarily implies the availability of judicial review of the size of the award. *See Honda Motor Co. v. Oberg*, 114 S. Ct. 2331 (1994); *Ramsey v. American Air Filter Co.*, 772 F.2d 1303 (7th Cir. 1985); *Erebia v. Chrysler Plastic Prods. Corp.*, 772 F.2d 1250 (6th Cir. 1985). As already indicated, this court's conscience was not shocked by the $4,000 award. If an appellate court is shocked by $4,000 worth of punishment to Parker Group in this case, this court may be shocked, but it will not go into shock.

### Attorneys Fees for Plaintiff

Now that the court has indicated its intentions with respect to Parker Group's post-trial attacks on the verdict in both of its aspects, the court turns to Ferrill's request for attorneys fees in the sum of $40,042.50. Despite Parker Group's protestations to the contrary, Ferrill is a prevailing party within the contemplation of 42 U.S.C. § 1988. Thus, she is entitled to her reasonable attorneys fees to the extent she has met her burden of proving them.

Ferrill did not prevail on her separate claim of constructive discharge resulting from an allegedly hostile racial environment, a claim that was devoid of merit from the start and that was eliminated when Parker Group's motion for summary judgment was partially granted on June 16, 1997. How many of the many hours spent by Ferrill's counsel were spent pursuing this illusory claim cannot be deduced by an exercise of Aristotelian logic from the evidence offered by Ferrill. This makes it difficult, if not impossible, to apply *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933 (1983), to the situation. The court could simply hold that Ferrill has failed in her burden of proof under *Hensley* and could deny any fee whatsoever. But this court will assume that it has the authority to exercise judgment based on its experience and on its familiarity with this case and to apply *Hensley* without express delineation in the record of plaintiff's successes and failures.

The court's best judgment is that Ferrill's lawyers spent approximately 25% of their time unproductively.

There is another criterion that must be considered. In fact, "[t]he starting point for considering fee requests under § 2000e-5(g)(2)(B) must be the degree of success obtained by the plaintiff." *Canup v. Chipman-Union, Inc.*, 123 F.3d 1440, 1443 (11th Cir. 1997). This proposition, of course, equally applies to fee requests under 42 U.S.C. § 1988. While Ferrill won more than a Pyrrhic victory here, especially insofar as she has created a valuable precedent if that precedent stands up on appellate review, she did not exactly "break the bank." The question in this case, then, becomes whether a total monetary recovery of $4,500 can justify piling onto defendant an attorneys fee in excess of $40,000. If the jury had known that Parker Group was going to be socked for ten times more than the amount of the punishment it deemed appropriate, would it have fixed $4,000 as the proper amount to accomplish punishment? This is an anomaly that the fee-fixers have not yet addressed and that this court will do no more than to acknowledge.

Parker Group's evidence by affidavit in opposition to Ferrill's fee petition insists that the hourly rates of Ferrill's lawyers are excessive. There is little or no challenge to the reasonableness of the total number of hours plaintiff's counsel spent. This court does not wish to quibble about plaintiff's

10

proposed "lodestar" in this case. It does, however, reserve the right to quibble in some future case. Instead, this court believes it to be of major significance in this case that Ferrill's attorneys entered into a written fee agreement with Ferrill, and that the agreement provides:

> I, Shirley Ferrill, hereby employ Hycall Brooks, III, P.C., as my attorney to represent me in the prosecution of my claim for discrimination against the Parker Group. I hereby agree to pay all expenses associated with my case. Hycall Brooks, III, P.C., shall receive an amount equal to forty-five percent (45%) of any funds received. If no monetary recovery is made, no attorney's fees will be charged.

This contingency fee contract says nothing about how to credit any fee coming to Hycall Brooks III, P.C., that the court ultimately assesses against Parker Group pursuant to a fee-shifting statute. Ferrill's attorneys bargained at arm's length for 45% of any monetary recovery and, in effect, acknowledged such fee as reasonable compensation, considering the time commitment and the risks anticipated. Counsel were willing to undertake this representation on a purely percentage fee basis, with no reference to § 1988 fee possibilities. This court, of course, is aware that fees awarded to a prevailing party against the losing party under § 1988 are not limited by the provisions of a contingency fee contract. The Supreme Court made clear in *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989), that a fee contract does not provide an automatic ceiling on the fee to be assessed against a non-prevailing defendant, but *Blanchard* just as clearly recognizes

11

that a fee arrangement "may aid in determining reasonableness." 109 S. Ct. 944. The court will not presume to arbitrate between Ferrill and her counsel as to the effect of their fee contract when this court awards fees against Parker Group. The court will "cross its fingers" and hope that it will never be required to interpret this particular fee agreement in light of the § 1988 fee hereinafter awarded. In the meantime, however, the court does its best to take into consideration the various factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (11th Cir. 1974), with emphasis on the "lodestar," but ameliorated by *Hensley*, *Blanchard* and *Canup*. Using its best judgment, and aided by the written fee agreement and the relatively small size of the recovery, the court concludes that a reasonable attorneys fee for Ferrill's counsel under the totality of circumstances is $10,000. The court hopes it has resisted the temptation of remembering inordinately the celebration prompted when it received an award of a $10,000 fee in its past life as a trial lawyer.

## Conclusion

A separate order consistent with this opinion will be entered. DONE this 21st day of November, 1997.

*[signature]*
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE